Hudson, J.
This action was brought by the plaintiffs and respondents against the defendant and appellant to recover of the defendant as a common carrier damages sustained upon a contract for the transportation of goods. The plaintiffs allege among other things, that on the 26th day of April, A. D. 1882, the defendant, in consideration of $40.90, agreed to carry from Minneapolis, in the State of Minnesota, to Jamestown, in the Territory of Dakota, and there deliver to the plaintiffs certain goods, consisting of about twenty-eight bushels of corn, of the value of $24.97, and three hundred and eighty-eight bushels of oats, of the value of $258.97, the property of the plaintiffs, which was delivered to the defendant, who received the same upon the agreement, for the purpose above mentioned; that the defendant did not safely carry and deliver said goods mentioned in pursuance of said agreement, *445 but on the contrary the defendant so negligently conducted its business as a common carrier that the corn and oats were wholly lost, to the damage of the plaintiffs of $387, for which they demanded j udgment. The defendant answered by a general denial of the plaintiffs’ claim. On the trial before the j ury, the plaintiffs, to support their case, called six witnesses, who were duly sworn and testified. The defendant introduced no proof. The case was submitted to the jury, under the charge of the Court, who, after deliberation, found a verdict for the plaintiffs in the sum of $310.83.' A motion by defendant for a new trial was overruled by the Court, and judgment was entered upon the verdict, from which the defendant appealed. The case is presented to this court upon the brief of the appellant, no oral argument having been made, and no brief was filed by the respondents. The appellant assigns seven grounds of error as occurring at the trial, upon which a reversal of the judgment is demanded. The first four of these grounds of error relate to the charge of the Court to the jury, and may all be considered together. That portion, of the charge of the Court to which exception is taken, is as follows:
“ The only question for you to consider is what amount there “ was short when the grain reached here (Jamestown.) The amount of shortage is really the dispute in this case,- and to ££ determine that question of -course you must take into consid-£C eration all the facts connected with the case. The cars, it seems, ££ were thrown from the track, and the company got the grain out, ££ and transferred it to other cars as soon as they could, and sent ££ it on to Jamestown. You have heard from the witnesses when ££ it arrived there. After being notified that the cars were here “ they went and measured it, and they found, as they say, a short- ££ age. The plaintiffs’ witnesses have come upon the stand and ££ they tell you the amount of shortage that they found, and how “ they found it, on the corn and on the oats. Counsel for the de- *446 “ fendant has called out on cross-examination some testimony “ with regard to what took place at the time the grain was taken “ from the wrecked cars and put into other cars, and some testi- “ mony showing that there was but little loss or but little waste “ at the time. The amount of waste on the corn, it is claimed by “ the counsel, was not to exceed some ten bushels in the transshipment. The waste' on the oats does not appear. The wet “ oats were left in the car; the dry oats were put in another car “ and forwarded, and these plaintiffs, as it is said, took the grain “ from the cars and measured the amount, and kept an account of “ it, and you have heard their statement here. It is for you to “ determine what was the shortage for which the company is lia- “ ble. It is a fair dispute or misunderstanding about this claim, “ and the defendant never has paid it, because it never became “ satisfied how much it ought to pay. You are here now to say how much they ought to pay; and you must go to your room, “ consider this matter carefully and honestly, and with the inten- “ tion of doing justice between the parties, as near as you can.”
It is contended by the counsel for defendant that the Court assumed in the charge certain facts as proven that should have been passed upon by the jury — namely, that there had been a loss. But it appears from this record that no witness has said there was no loss. Four of these witnesses were the employes of the company at the time the accident occurred, and assisted in taking out •the grain and transferring it to other éars. Mr. Daley, the freight and express agent of the defendant company, says there was a Wreck below Sanborn, and he went down to look after the freight there. These two car-loads of grain were in the wreck, the oats in the water; the corn was dry; the car lying on its side; “ I could not see that a bushel of corn was wasted; there might have been a bushel.” This is the nearest any witness has come to disputing the loss. Mr. Daley says he sold the wet oats and remitted *447 the funds to the freight agent of the company. He further says-that he told Bush to make out his bill and send it in to the company; “ they will undoubtedly adjust it.” Defendant’s counsel-conceded that the train containing the cars in question was brought west from Fargo, April 21; reached Sanborn, April 22, and was-there wrecked.
He also admitted on the trial that the bill of the grain shipped was correct, and the amount stated for freight paid was also correct. The charge of the Court should be based upon the evidence in the case; and in this case there was no testimony except what was given by the plaintiffs’ witnesses, and they all concurred in the statement that the cars containing the grain were thrown from the track into the water, and that both corn and oats- were lost, but they disagree as to the extent of the loss; some of them said there was but little.
It is difficult to see how there was any question of fact to- be-submitted to the jury, except as to the extent of the loss. No other point was questioned on the trial. How could the Court have told the jury to weigh the evidence and determine the question whether there was any loss, when there was not a scintilla of evidence tending to deny the fact which was testified to by all the witnesses? There was no conflict in the testimony on the question of loss; there was no evidence to be weighed, and no preponderance to be found.
The counsel for the defendant seems to have taken great pains-to produce authority showing the duty of tbe Court in charging the jury, all of which is good law when there are facts to which it may be applied. There was no conflict except as to the amount of the loss. All of the witnesses testify to some loss on the grain. In this case if the damages had been liquidated and made certain,the Court might, and it would have been its duty to have directed *448 a verdict for the sum thus made certain, but as the only question on which there was any disagreement of witnesses was the extent of the loss, that question was properly submitted to the jury.
The fifth assignment is as follows: The jury erred in its verdict. Sixth — the Court erred in its judgment, based upon said verdict. Seventh — -the Court erred in overruling the motion of the defendant for a new trial.
Neither of these assignments of error can be considered, for the reason that they were not properly presented to the court on the motion for a new trial. No compliance has been made with the statute or the rules, as will be seen by reference to the decision of this court, in the case of Caulfield et al. v. Bogle, 2 Dak., 484. The particular error upon which the motion for a new trial, or a reversal of the judgment is relied upon should be pointed out.
Finding no error in the record, the judgment of the District Court is,
Affirmed.
All the Justices concur.