FRANZ FALK BREWING Co., Appellant, *v.* MIELENZ BROS., Respondents.

**1. Appeal—Assignment of Error.**

An assignment, "the court erred in admitting evidence at the trial against the objection and exception of the appellant," is improper for not stating in what the error consisted, or pointing out the evidence, the admission of which it is claimed was error.

**2. Same.**

An assignment, "the court erred at the trial in excluding evidence offered by appellant, and to the exclusion of which appellant duly excepted," is improper as not pointing out what evidence was excluded, to the exclusion of which it is claimed there was error.

**3. How to Assign Error.**

It is not only necessary to allege error on the part of the court in doing the act complained of, but there must be some ground stated as the basis of the allegation, and it must be specifically and definitely set forth in the assignment, so as to show in what way an error was committed.

**4. Assignment of Error Defined.**

An assignment of error means the marking or pointing out of the error.

**5. Review—Error not Relied on.**

An assignment of error will not be considered that was not relied upon or mentioned by the appellant in his argument before the court.

**6. Assignment of Error—Disapproval.**

An assignment, "the court erred in overruling and denying appellant's motion to set aside the verdict and for a new trial," disapproved. It is not such an assignment as the court is bound to notice.

**7. Review—Sufficiency of Evidence.**

To determine whether or not a verdict is sustained by the evidence, this court, from the province of the jury, will not speculate or inquire how it would have viewed or acted upon the evidence. The only question to be answered is, is there any legal evidence upon which the conclusions embraced in it can be fairly reached? If there is, in a case where the evidence is conflicting, the verdict will not be disturbed; if there is not, it will be set aside.

(Submitted May 12, 1887; affirmed May 26; opinion filed February 23, 1888.)

Appeal from the district court of Davison county; Hon. BARTLETT TRIPP, Judge.

The action was for the price of certain beer the plaintiff had sold to A. W. and F. W. Mielenz, partners. The defense was that the beer was not what it was warranted to be. A counter-claim was also interposed on the same ground, as appears by the opinion. The plaintiff denied the matters set up in the counter-claim. There was a verdict in favor of the defendants. Plaintiff appealed. There was a conflict in the evidence, and from the rule adopted by the court in such cases, and the fact that the evidence (held sufficient to support the verdict) is voluminous, the reporter has not deemed it of sufficient practical utility to publish it.

*E. Whittlesey,* (*A. J. Edgerton,* of counsel,) for appellant.

Subdivision 6, § 286, C. C. Pro., grants a new trial where the evidence is insufficient to justify the verdict, and the verdict is contrary to law.

In the case at bar the evidence is insufficient to support the verdict, and is contrary to law.

If there is any evidence upon which to base the verdict, it is very slight, and the verdict is manifestly and palpably against the weight of evidence.

The evidence is conflicting. *Coleman* v. *Meade,* 13 Bush, 358; *Wylie* v. *Marine Bank,* 61 N. Y. 415; *Schwartz* v. *Yearley,* 31 Md. 270; *McGavock* v. *Woodlief,* 20 How. 221; *Middleton* v. *Findler,* 22 Cal. 76.

The granting of a new trial upon the ground that the verdict is contrary to the evidence, it is true, is within the discretion of the court. Notwithstanding, when it is made apparent to the court that a new trial should be granted, it will be ordered, though it has been refused by the court below. *Byington* v. *Woodard,* 9 Ia. 360; *Huntingdon* v. *Howe,* 15 Ia. 606; *Martin* v. *Orndorff,* 20 Ia. 217; *McAunick* v. *Mississippi & M. R. R. Co.,* 20 Ia. 338.

While an appellate court will cautiously and even reluctantly interfere with a ruling of an inferior court, refusing to set aside

a verdict on the ground that it conflicts with the evidence, yet, if it clearly so appears, such ruling must be reversed. *State* v. *Tomlinson*, 11 Ia. 401; *McAunick* v. *M. & M. R. R. Co.*, 20 Ia. 338; *Brown* v. *Mullin*, 3 Pac. Rep. 99; *Fawcet* v. *Woods*, 5 Ia. 400; *Northern Pac. R. R. Co.* v. *Shimmel*, 9 Pac. R. 889; *Hoffman* v. *Bosch*, 4 Pac. Rep. 703; *Jourdan* v. *Reed*, 1 Ia. 135; 27 N. W. Rep. 276; 28 N. W. Rep. 922, 634; *Halpin* v. *Third Avenue R. Co.*, 8 Jones & S. 175; *Allgro* v. *Duncan*, 24 How. 210; 39 N. Y. 313; 29 N. Y. Rep. 755; *St. Louis & S. F. Ry.* v. *Bashman*, 1 S. W. Rep. 555.

*Dillon & Preston*, for respondents.

Appellant in its brief does not claim any error under the first two assignments, hence they cannot be considered by this court.

The third assignment presents but a single alleged error. It is based solely on the ground that the evidence will not support the verdict.

It has been repeatedly held that, where there is a conflict of evidence, a failure to ask the court to direct a verdict is an admission that there is sufficient evidence to go to the jury, and the party so failing is precluded from moving to set aside the verdict as against the evidence. Baylies, New Trials & Appeals, 503.

Where a motion for a new trial upon the ground of insufficiency of evidence has been denied, the court, on appeal, will not attempt a critical examination of the evidence, with a view to seeing whether the judge has correctly disposed of the motion. Id. 504.

A motion for a new trial is addressed to the discretion of the trial court, and its decision is final, unless it is clearly and manifestly wrong. There must have been an abuse of discretion. *Sang* v. *Beers*, 30 N. W. Rep. 258; *Faulkner* v. *Klamp*, 20 N. W. Rep. 220; *Conklin* v. *City of Dubuque*, 6 N. W. Rep. 894: *Gutierrez* v. *Brinkerhoff*, 1 Pac. Rep. 482.

Aside from these rules, an examination shows that the verdict in this case is fully sustained by the evidence.

FRANCIS, J.   This action comes up on appeal from the judgment of the district court in and for the county of Davidson, territory of Dakota, on exceptions to the verdict of the jury, and on the judgment of the court denying a motion to set aside the verdict and grant a new trial, and three errors assigned.   The action was originally brought to recover $660 for goods, wares, and merchandise sold and delivered by the plaintiff to the defendants.

The defendants answered, admitting that they ordered and received the goods, wares, and merchandise mentioned in the complaint, namely, certain beer.

Defendants further allege that on or about March 5, 1884, they made a contract with the plaintiff, whereby it agreed to sell and deliver beer to the defendants, at Mitchell, Dak., when ordered by defendants, which plaintiff agreed should, when received at Mitchell, be good and salable, and as good as the Joseph Schlitz Brewing Company beer, or better, and for which the defendants promised to pay the plaintiff $6.40 per barrel; and that by said contract the defendants were to pay freight on the beer when they received it, and the plaintiff was to procure and purchase for the defendant A. W. Mielenz a thousand-mile ticket on the Chicago, Milwaukee & St. Paul Railroad, free of charge; that said beer, when received at Mitchell, was not good or salable, and was not as good as the Joseph Schlitz Brewing Company beer; was sour, spoiled, unsalable, and damaged, and not worth the freight paid thereon by the defendants.   That the freight paid thereon by the defendants amounted to $180.   That, as soon as defendants ascertained that said beer was not good and salable they notified the plaintiff of that fact, and that they held said beer subject to the plaintiff's orders.

The defendants further allege that for a long time prior to March 5, 1884, they had been doing a wholesale liquor business in the city of Mitchell, Dak., under the name and style of Mielenz Bros.; that as such firm they had a large number of customers who were receiving their supplies from defendants; and that, being desirous of purchasing said beer for the purpose of

selling the same in job lots to their said customers, they did, on or about March 5, 1884, make a contract with the plaintiff, whereby it was agreed by and between the plaintiff and defendants that the plaintiff should ship and deliver to the defendants certain beer at $6.40 per barrel, said defendants to pay freight on all beer received, said beer to be good and salable beer, and to be as good as Joseph Schlitz Brewing Company beer, and that said beer should be good and salable beer when received at Mitchell.

That the defendants, relying upon said contract and representations, ordered, under said contract, a car-load of said beer, and on or about July 10th, ordered a second car-load of said beer, under the terms of said contract. That they received the beer so ordered shortly afterwards, and paid the sum of $180 freight upon the same, and sold the same to their said customers in the towns on the line of roads near the town of Mitchell.

That said defendants were at large expense shipping said beer to their customers, and that said beer was returned by their said customers to these defendants on account of its being sour, spoiled, and worthless, and these defendants were compelled and did pay in freight large sums of money, amounting to the sum of $50, in the shipping and returning of said beer, making in all the sum of $230 paid in freight, besides the sum of $10 for drayage.

Defendants then aver that said beer was not good or salable beer, nor was it as good as Joseph Schlitz Brewing Company's beer, and that the same was sour and spoiled, and that, as soon as the defendants ascertained that said beer was spoiled and sour, they notified the plaintiff to that effect, and that said beer was held subject to plaintiff's order.

The defendants further allege that the plaintiff failed and refused to furnish the defendants with good beer, and that, by reason of the spoiled condition of said beer, they had been damaged in their trade in the sum of $100, and damaged by reason of the payment of freight and drayage $330 in addition, no part of which has been paid.

Wherefore the defendants demand judgment against the plaintiff in the sum of $330, and for costs.

Plaintiff replied to the defendant's counter-claim, admitting that the defendants were a firm doing business at Mitchell under the firm name and style of Mielenz Bros., and denying any knowledge or information of the other allegations of said counter-claim.

The case was tried to the court and jury, and, March 26, 1886, the jury rendered the following verdict: "We, the jury, find for the defendants, and assess their damages at one cent."

March 26, 1886, the plaintiff moved for a new trial upon the following grounds: "That the verdict is contrary to the law and evidence introduced upon the trial of said case, and that the evidence will not support the verdict."   April 2, 1886, the court denied said motion, and refused a new trial.

April 19, 1886, judgment was entered in said action that the defendants recover of the plaintiff the sum of $68.16, damages and costs.

December 11, 1886, the plaintiff perfected its appeal to this court.   The errors assigned are as follows:

"The appellant herein says there is manifest error on the face of the record, in this:

"1. The court erred in admitting evidence at the trial, against the objection and exception of the appellant.

"2. The court erred at the trial in excluding evidence offered by appellant, and to the exclusion of which appellant duly excepted.

"3. The court erred in overruling and denying appellant's motion to set aside the verdict and for a new trial."

Neither of these assignments of error is properly made.   They allege the commission of error, but do not state what the error consisted in.

The first assignment fails to point out or refer to the evidence admitted, the admission of which is claimed as error.

The second assignment equally fails to point out or designate

what evidence was offered or excluded, the exclusion of which was relied upon as error.

The third and last assignment asserts that "the court erred in overruling and denying appellant's motion to set aside the verdict, and for a new trial;" but fails to call the attention of the court to anything relied upon as the ground of said assignment of error, or to state how or in what particular the act of the court in overruling and denying the motion to set aside the verdict, and for a new trial, was erroneous.

As said by this court in *McCormack* v. *Phillips*, 34 N. W. Rep. 62: "Counsel must specifically assign the error, and, in the assignment, so designate what is complained of as error as to put the finger of the court upon it." See, also, *Caulfield* v. *Bogle*, 2 Dak. 464, 11 N. W. Rep. 511; *Bush* v. *Railroad Co.*, 3 Dak. 445, 22 N.W. Rep. 508; and rule 16 of this court.

It is not only necessary to allege or assert error on the part of the court in doing the act complained of, but there must be some ground alleged as the basis of the assignment that the act was erroneous, and it must be specifically and definitely declared or set forth in the assignment, and as part of it, how, why, in what way, on what ground, or for what reason, an error was committed or exists, or is claimed to exist.

The very meaning of the word "assign" is "to mark out," "to allot," "to apportion," "to make over,"—and there can be no assignment unless it discloses and designates what is marked out, or allotted, or apportioned, or made over.

An assignment of error actually means the marking or pointing out of the error.

But the first and second assignments of error would not now be considered, even had the errors been properly pointed out, as they were not relied upon nor mentioned in the argument of the appellant's counsel before this court.

This leaves the third and last assignment of error, which is, of itself, open to the objection that it is not such an assignment as this court is bound to notice, or as it will, generally, consider.

We will, however, for the purposes of this action, take and consider, in connection with said intended assignment of error, (and as though they formed a part thereof, and were stated as the grounds of the error,) the 11 specified particulars in which the evidence was alleged to be insufficient to sustain the verdict, which particulars were stated orally on the hearing of the motion for a new trial, and were subsequently reduced to writing, and allowed and settled by the district court as a bill of exceptions, and made a part of the record in the action, as follows:

"1. The evidence was insufficient to sustain the verdict in so far as the verdict finds the damages at one cent.

"2. In so far as the verdict finds that the plaintiff warranted the beer, for the price of which this action was brought, to be equal or better in quality than that of the Schlitz Brewing Company, or that plaintiff warranted the same in any particular.

"3. In so far as it finds the excess of the value which the beer in question would have had if the alleged warranty had been complied with, over its actual value, to be equal to the purchase price by the defendants agreed to be paid therefor.

"4. In so far as the verdict finds said excess, together with the damages claimed to have been sustained by defendants in consequence of a breach of the alleged warranty, to be equal to the agreed price of said beer and the price of the said mileage ticket mentioned in the complaint, or equal to the agreed price of said beer alone.

"5. In so far as it finds that the plaintiff agreed to furnish said mileage ticket to defendants free of charge.

"6. In so far as it finds that the damages claimed to have been sustained by the defendants, in consequence of the alleged breach of the alleged warranty by plaintiff of said beer, equaled the price of said beer and mileage ticket.

"7. In so far as the verdict finds that one Patek, as the alleged agent of the plaintiff, warranted said beer as to quality.

"8. In so far as the verdict finds that Patek, as such agent, had actual or apparent authority to warrant said beer.

"9. In so far as it finds that plaintiff warranted the quality

of said beer when the same should arrive at Mitchell, or until sold by defendant.

"10. In so far as it finds that said beer was not sound and merchantable when delivered on board the cars in Milwaukee.

"11. In so far as it finds that said beer was not properly packed and shipped at Milwaukee, the place of shipment and delivery."

On reading the evidence and testimony offered in the trial in the district court, as set forth in the abstract, we find that the jury might have arrived at, therefrom, the very findings stated in said 11 specified particulars, and that the said evidence and testimony warranted the verdict rendered, and was therefore sufficient to sustain it, and all the said "findings" alleged to have been included in it.

In considering the verdict of a jury in any particular case, to determine whether or not it is sustained by the evidence, we are not to speculate or query how we would have viewed the evidence and testimony, or what verdict we would have rendered, had we been of the jury. The real and only question to be solved and answered is, is there any legal evidence upon which the verdict can properly be based, and the conclusions embraced in and covered by it be fairly reached?

It is the province of the jury to weigh and pass upon the evidence, to reconcile conflicting testimony, to determine the truth or value of evidence, to ascertain and declare, from all of the evidence and testimony, the facts of the case, and from the facts, when ascertained by them, and the law, as given to them by the court, to arrive at and announce their decision, which is their verdict; and we cannot determine what specific evidence they relied upon in reaching that verdict, nor how they reconciled or adjusted conflicting evidence or testimony, nor just what they rejected or doubted, nor the precise weight or effect they gave to any particular bit or item of evidence or testimony; nor can we take to ourselves and use the intellectual eye, or the judgment, will, or conscience of each or any individual juror.

This court will, as a general rule, only ask and determine, is

there any legal evidence or testimony which fairly warrants the verdict of the jury? If there is, particularly in a case where the evidence is conflicting, the verdict will not be disturbed; and, if there is not, it will be set aside. The rule as to the setting aside of verdicts has already been laid down by this court in *Caulfield* v. *Bogle*, 2 Dak. 464, 11 N. W. Rep. 511, and *Finney* v. *Railroad Co.*, 3 Dak. 270, 16 N. W. Rep. 500.

The district court did not err in overruling and denying appellant's motion to set aside the verdict and for a new trial. The judgment of the district court is affirmed.

All the justices concurring.