## KIELBACH v. CHICAGO, M. & St. P. RY.

1. Where the evidence is conflicting, but fairly tends to support a verdict for plaintiff, it will not be disturbed on appeal.

2. Where the evidence was conflicting, it was proper to deny defendant's motion for direction of a verdict.

3. Any error in sustaining plaintiff's objection to a question asked was cured by permiting the witness to answer it in another part of his testimony.

4. In an action to recover for stock killed on a railroad track, overruling plaintiff's objections to questions asked the fireman on cross-examination, as to his failure to see the animal on the track, was not error, since the jury could not have been led to believe thereby that it was the duty of the engineer and fireman to keep a lookout for trespassing stock; the court having charged them that such was not the trainmen's duty, and that the absence of a lookout was not negligence.

(Opinion filed November 21, 1900.)

Appeal from circuit court, Hutchinson county.   Hon. E. G. SMITH, Judge.

Action by Leonard Kielbach against the Chicago, Milwaukee & St. Paul Railway Company to recover for stock killed by defendant.   From a judgment for plaintiff, defendant appeals.   Affirmed.

*J. L. Hannett*, for appellant.

The undisputed evidence in this case fully rebuts the presumption of negligence created by the statute arising from the proof of killing the animal. The question in the case therefore became one of law to be decided by the court.   Gay v. Ry. Co., 5 Dak. 514;  Huber v. Ry. Co., 6 Dak. 392;  Potter v. Ry. Co., 5 Dak. 69; Hebom v. Ry. Co., 4 S. D. 538; Harrison v. Ry. Co., 6 S. D. 100; Keilbach v. Ry. Co., 73 N. W. 951.

A railroad company owes no duty to the owner of an animal found trespassing on its right of way, which requires its employees to keep a lookout for such trespassing animals. The company has a right to presume that there are no trespassing animals thereon.   The failure therefore of the employees of the defendant to keep a lookout for the trespassing animal even when approaching a public crossing affords no evidence of negligence on the part of defendant. Lighthouse v. Ry. Co., 3 S. D. 518;  Keilbach v. Ry. Co., *supra*; Harrison v. Ry. Co., *supra*; Palmer v. Ry. Co., 33 N. W. 707; Stacy v. Ry. Co., 43 N. W. 905;  Locke v. Ry. Co., 15 Minn. 350; Pierce on Railroads, 401.

In view of the undisputed evidence in this case it becomes immaterial whether the brakes were set by the brakeman or not, as the undisputed evidence shows that the train could not have been stopped in a less distance than 2800 feet, going at

the rate of speed it was then going, if the steam was shut off and all brakes applied.   Hebom v. Ry. Co., 4 S. D. 538; Harrison v. Ry. Co., 6 S. D. 100; Keilbach v. Ry. Co., 78 N. W. 951.

*W. J. Hooper*, for respondent.

CORSON, J.   This is an action to recover the value of a calf killed by a train of the defendant railway company in Hutchinson county.   The action was tried by a jury, and verdict and judgment were rendered in favor of the plaintiff, and the defendant appeals.   This case was before us at a former term of this court, and a judgment in favor of the plaintiff was reversed, and the case remanded for a new trial.   The case is reported in 11 S. D. 468, 78 N. W. 951.

The animal was killed a short distance north of a highway crossing.   The train, consisting of engine, seven freight cars, and caboose, was going south.   The animal came upon the track from 250 to 300 yards north of the crossing, and was struck near the crossing.   The road for a mile or more north of the crossing runs through a level country, and about a quarter of a mile north of the crossing it curves somewhat to the east, and this curve extends a short distance south of the crossing.   There is no controversy in this case as to the ownership of the calf or its value, or as to the fact of its being killed by the engine on defendant's train between 9 and 10 o'clock in the forenoon.   The defendant contends, however, that the *prima facie* case made by the plaintiff was fully overcome by the evidence on the part of the appellant, and that upon the undisputed evidence the court below should have granted the motion for the direction of a verdict in its favor.   It was clearly shown, and is undisputed that the engine was in proper condition, and

the train properly equipped with a sufficient number of competent men and in good running order. The engineer, fireman, and one brakeman employed on the train testified at the trial. The engineer testified that he sat upon the right-hand side of the engine, and that he did not and could not see the highway crossing, and for a considerable distance north of it, by reason of the curve of the railway; that he did not see the animal upon the track until about 35 rods north of the crossing, but that he was informed by the fireman that there was stock upon the track when about 60 rods north of the crossing; that he at once shut off steam, signaled for brakes, set the brake on the tender, and then looked out and saw the animal upon the track just north of the crossing; that it was not possible to stop the train after he learned that the animal was upon the track, before reaching the point where it was struck. The fireman testified that from a point about a mile north of the crossing until about 60 rods from the crossing he was engaged in firing, sweeping out, etc., and did not see the animal upon the track until within about that distance; that when he first saw the animal it was about ten feet from the track; that he immediately called the attention of the engineer to the fact that there was stock upon the track. And he corroborates the statement of the engineer that he at once signaled for brakes, shut off steam, and applied the brake attached to the tender of the engine. He also states that a train going at the rate of speed at which that train was going (about 30 miles an hour) could not be stopped within 2,800 or 3,000 feet. The brakeman testified that he heard the whistle for brakes, and immediately set the brakes on the rear part of the train. He also testified that the train could not be stopped within half a mile. Four wit-

nesses testified on the part of the plaintiff, and it is contended on the part of the respondent that their evidence was such as to create a conflict in the evidence, and authorize the jury, if it believed the testimony of plaintiff's witnesses, in finding that the engineer or fireman, or both, did see the animal in time to have stopped the train and avoided the accident. The plaintiff testified as follows: "I live about 80 rods west of the track. My house is on a little hill. I could see the track for a long distance from my house. The calf was north of this crossing about 250 yards when I first saw it, and the train was away from the calf about one mile, and one mile and 250 yards north of the crossing. I saw the calf all the time from the time I first saw it until it was struck. The calf remained upon the track all the time from the time I first saw it until it was struck. The calf did not stand still. It run. It run south from the train,—away from the train." Mrs. Kielbach testified as follows: "When I first saw the calf, the train was about a mile away from it. I stood outside and looked on from the time I first saw it until it struck the calf. I watched the calf all the time from the time I first saw it until it was killed. The calf remained on the track from the time I first saw it until it was killed." There was evidence on the part of the plaintiff tending to prove that the only time the whistle sounded was when the train passed the whistling post about 80 rods north of the crossing, that no person set any brakes on the train before the animal was struck, and that the speed of the train was not slackened. The evidence on the part of the plaintiff further tended to show that a person standing upon the track a half mile or a mile away in the daytime could see the crossing distinctly, and all points along the railway line from there to the

crossing. The points of conflict are stated by respondent's counsel as follows: The testimony that the calf came on the track 60 rods in front of the engine was rebutted by the testimony of the plaintiff and his wife that it was on the track when the train was a mile away, and remained thereon until it was struck. The testimony of the engineer that they could not have seen the calf sooner, because of the curve, was rebutted by the testimony of plaintiff and his witnesses that no curve capable of obstructing the view existed. The testimony of the trainmen that they tried to prevent the accident by blowing the alarm was rebutted by the testimony of plaintiff and his witnesses that no alarm was sounded. The testimony that the train could not have been stopped within 2,800 feet was rebutted by the engineer's testimony that it could have been stopped within a much shorter distance. The testimony of the trainmen that an attempt was made to stop the train was rebutted by the testimony of plaintiff and two witnesses that no attempt was in fact made, nor did the speed of the train slacken before striking the calf. The testimony that the fireman did not see the calf was rebutted by the testimony of the plaintiff and his wife showing that, if he saw it while on the right of way, the train was at least a mile off when he so saw it and notified the engineer.

The evidence, therefore, in this case brings it within the rule laid down in Lighthouse v. Railway Co., 3 S. D. 518, 54 N. W. 320; Sheldon v. Railway Co., 6 S. D. 606, 62 N. W. 955; Bennet v. Railway Co., 8 S. D. 394, 66 N. W. 934; Hutchinson v. Railway Co., 9 S. D. 5, 67 N. W. 853; Schimke v. Railway Co., 11 S. D. 471, 78 N. W. 951. A verdict on conflicting evidence will not be disturbed if there is evidence fairly tending

to support it.   Brewing Co., v. Mielenz,  5 Dak. 136, 37 N. W. 728; Jeansch v. Lewis, 1 S. D. 609,  48 N.   W.   128; Weiss v. Evans 13 S  D. 185, 82 N. W. 389.   In the  first  case  the late territorial  supreme  court  said:  "It is  the  province  of the jury to weigh and pass upon the  evidence,  to  reconcile conflicting testimony, to determine the truth  or value of evidence, to  ascertain  and  declare  from   the   evidence   and testimony  the  facts  of  the  case,  and  from   the   facts   as ascertained   by   them,   and   the   law   as   given   to them  by  the  court,  to   arrive   at   and   announce their decision."   A verdict will not  be   disturbed  merely  because the reviewing court would have found  differently.   Under the evidence in this case, we are of  the  opinion  that  the court ruled correctly in denying defendant's motion for the direction of a verdict, and that the case was  properly  submitted to the jury.   In the charge of the trial court  the  law  applicable to this class of cases was  very  fairly  and  clearly  stated,  and we do not feel at liberty to disturb the verdict.

The appellant further contends that the court erred in sustaining the plaintiff's objections to certain questions propounded to the witnesses.  Counsel for the defendant asked the engineer, when on the stand, as a witness, the following question: "State more fully, if you can, the reason why the engine is not reversed when stock is seen upon the track."  Whether there was error or not in sustaining the  objection to this question, it was cured by the witness being permitted to state fully in another part of his testimony his reasons.  The other questions were mainly questions asked the fireman on cross-examination, and were relative to his failure to see the animal upon the track.  It is contended by the appellant that these ques-

tions had a tendency to impress upon the jury that it was necessary for the engineer and fireman to keep a lookout for trespassing stock. But we are of the opinion that the jury could not have been misled as to the object of these questions, and especially as the court instructed the jury very fully upon that subject. In the second instruction requested by the appellant and given by the court, it said: "Second The court instructs you that the employes of the defendant in charge of its train are not required to keep a lookout for trespassing animals upon the tracks. They have the right to presume that the track is clear of trespassing animals, and that it is only when the employes in charge of the train see animals on or near the track that they are required to use ordinary and reasonable care to prevent the train from injuring said animals so trespassing upon the track of the defendant." Again the court, in its charge to the jury, uses the following language: "Therefore in this case the defendant company or its employes were not required as a matter of law, to be on the lookout for that stock; they were not obliged to see it; and the absence of a lookout, in itself, would not be negligence on the part of the defendant company. * * * You are instructed in this case that, under the evidence here, the law of this case is that the defendant company was not obliged to see that stock; that is to say, if they actually failed to see this animal upon the track, it not being upon a public crossing, they were not liable for the damage which might result. But if they actually did see it in time to have prevented the injury, and negligently failed to use reasonable means to prevent the injury, then they would be liable."

It is further contended on the part of the appellant that the evidence is substantially the same as on the former trial, and

that being so, the decision on the former appeal has become the law of the case. But, in the view we take of the evidence, a different case is now before us from that presented by the former appeal. Finding no error in the record, the judgment of the court below and the order denying a new trial are affirmed.