## COUGHRAN v. WESTERN ELEVATOR CO.

A mortgagee of grain, who authorizes the mortgagor to sell the
same and collect the money, waives his mortgage lien.

Whether a mortgagee of grain authorized the mortgagor to sell
it and collect the money, and thereby waived the mortgage lien, **held,**
under the evidence, for the jury.

Where impartial minds may reasonably draw different conclusions
from the evidence, the verdict will not be disturbed.

(Opinion filed, June 24, 1908.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH
W. JONES, Judge.

Action by E. W. Coughran against the Western Elevator Com-
pany. From a judgment for defendant and an order denying a
motion for a new trial, plaintiff appeals. Affirmed.

*Aikens & Judge,* for appellant. *Winsor & McNaughton* and
*McCulla & McCulla,* for respondent.

FULLER, J. On this appeal from a judgment and order de-
nying a new trial of this action by a mortgagee to recover the
value of certain grain purchased from the mortgagor by the re-
spondent elevator company, the only ground of argument for a re-
versal is that the evidence is not sufficient to sustain the verdict.
That the indebtedness secured by the mortgage exceeded the value
of the grain described therein, and so purchased by respondent is
undisputed, and a waiver by appellant of the usual conditions
against the sale or removal of the property by the mortgagor was
the principal issue tried and submitted to the jury under instruc-
tions with which all concerned appear to be well satisfied.

It was shown at the trial that the mortgagor, James McGrath,
had been appellant's tenant for many years, and as such raised

the grain covered by the mortgage during the farming season of 1905, and sold and delivered the same to respondent at the village of Rowena in the month of September of that year. Though controverted in some material respects, McGrath's testimony was to the effect that after the wheat crop had been sold and delivered to respondent, but before the purchase price had been paid, he called at the office of appellant in Sioux Falls ,and expressed a desire to hold the oats for a better price, but appellant was of the opinion that the market was declining, and, upon being informed that certain bills and the expenses of threshing had not been paid by McGrath, he told him to "go out and sell and settle up." By counsel for appellant: "Q. Mr. Coughran did not tell you to bring in the money to him, did he? A. No; he told me to sell and settle up, and he asked me what day I would be in, and I named a day, and I did not go in." On the witness stand in his own behalf appellant made the following statement relative to the sale of the oats by McGrath to respondent's grain buyer, N. C. Libby: "I then told him he had better sell the oats, for I needed the money; to go through the account, and have a settlement with Libby to know where he stood; that Mr. Libby would send me a check by Monday's mail. This he agreed to do. That is all the talk I ever had with McGrath about disposing of this grain to Libby."

Mr. Libby testified on the part of the defense as follows: "I have resided at Rowena since the fall of 1904. My business is grain buyer and station agent. I was employed as local manager for defendant at Rowena in September, 1905. As such manager I bought certain grain from James McGrath. I paid the money, the proceeds of the wheat and oats I purchased, to McGrath. Before paying this money I had two or three conversations with plaintiff regarding it. The first was about September 7 or 8, 1905, in the depot at Rowena. I cannot give the exact words used, but he came in and introduced himself, and inquired about McGrath selling the grain, and wanted to know if he had settled. I told him he had not. He inquired as to where McGrath was, and said he came out by his place expecting to see him but was unable to. He wanted to know how much grain had been brought in. I figured up the amount. He spoke at that time about some grain that

was piled on the ground as he noticed in driving by. That is all I remember. The next conversation was the next day in the depot, I think. He asked if McGrath had been in, and I told him 'No'; that I was ready and anxious to settle. Nothing was said about holding the money. He said that he would like for McGrath to settle and bring the money in, and that he didn't see why he did not do it. Nothing was said by Coughran about having any lien on the grain." This witness was measurably corroborated by his wife, but positively disputed by appellant, and also by Mr. Doolittle, who testified that Mr. Coughran told Libby not to pay McGrath any money, because he had a mortgage on the grain. If appellant authorized McGrath to sell the grain and collect the money, there was a complete waiver of his mortgage lien, and the probative force of the conflicting testimony relative to that question was for the jury to determine.

As different impartial minds might reasonably draw different conclusions from the facts and circumstances in evidence, the verdict for respondent is sustainable by the prevailing rule and the uniform decisions of this court. Haugen v. Chicago, M. & St. P. Ry. Co., 3 S. D. 394, 53 N. W. 769; Land & Irrigation Co. v. Hawley, 7 S. D. 229, 63 N. W. 904; McKeever v. Homestake Mining Co., 10 S. D. 599, 74 N. W. 1053; Kielbach v. Chicago, M. & St. P. Ry. Co., 13 S. D. 629, 84 N. W. 192; Lockhart v. Hewitt, 18 S. D. 522, 101 N. W. 355.

Finding the evidence sufficient to sustain the verdict, the judgment entered thereon is affirmed.