JOHNSON, Appellant, v. OLSON, Respondent

(26 N. W.2d 132)

(File No. 8877. Opinion filed February 24, 1947.)
Rehearing Denied April 7, 1947.

**John Carl Mundt** and **B. O. Stordahl,** both of Sioux Falls, for Appellant.

**Harold Bogue,** of Canton, and **Alan Bogue,** of Sioux Falls, for Respondent.

SMITH, J. The complaint of the plaintiff alleged that her deceased father and the deceased parents of defendant had agreed in writing that defendant's parents would adopt her and that she should share equally with defendant in their property, and prayed that said contract be enforced against defendant and the property formerly owned by his deceased parents. The cause was heard by the court without a jury. The court entered findings, conclusions and judgment for defendant. Plaintiff made a motion for a new trial which was dismissed by the trial court. Plaintiff appealed. The cause was remanded with directions to hear the motion for a new trial. Johnson v. Olson, 70 S. D. 617, 20 N. W.2d 226. Thereafter the motion for new trial was heard and denied, and plaintiff has appealed from the order denying her motion. We propose to deal with the appeal from the judgment and the subsequent appeal from the above-described order in a single opinion.

Plaintiff was born in Norway in 1901. She is the youngest of a large family of children. Her mother died

when plaintiff was a very small girl. Her mother and defendant's mother were sisters. It was known prior to her mother's death that the plaintiff's brother, Christian, was going to the United States. The mother asked Christian to consult defendant's parents, Olina Olson and John H. Olson, who then lived on a farm near Canton, South Dakota, about taking plaintiff. After Christian had arrived in Canton and had advised his father by letter that defendant's parents were willing to take plaintiff, an arrangement was ultimately made by correspondence between plaintiff's father and defendant's parents whereby plaintiff was to come to the Olsons and her sixteen-year old sister, Gunda, was to come to the home of a neighbor of Olsons. In making these arrangements it was discovered that before the girls could immigrate to the United States each of them must have a written agreement on the part of those with whom they were to stay that they would not become public charges. Written instruments were prepared in triplicate at Canton, South Dakota, and were forwarded to plaintiff's father. Plaintiff testified that the agreement on her behalf was signed by Mr. and Mrs. Olson and by her father and her father's second wife and that in addition to the agreement required by the immigration authorities, it contained an agreement that the Olsons would adopt her and that she would share equally with defendant in their property. Plaintiff's stepmother gave like testimony. When plaintiff was six or seven and Gunda sixteen, they left for America. The above-described papers were placed in Gunda's suit case. She testified that upon arrival at Canton she delivered two copies of the agreement dealing with plantiff to the Olsons and does not know what became of the third copy. Plaintiff lived with the Olsons from 1907 until 1917 when she was married. Mr. Olson died in 1929 and Mrs. Olson died in 1934. Mrs. Olson, according to plaintiff, first told her of the above-described agreement when she was fourteen while they were driving to Canton, to attend confirmation, and first showed her the two copies of the agreement in the living room of her Canton home during the spring before her death. Plaintiff further testified that on the day before her death, Mrs. Olson took her

to a storage room on the second floor of the Canton home, unlocked a trunk, showed her the two copies of the agreement. and returned them to their place of safekeeping. Plaintiff further testified that she, Gunda, and Gunda's husband went to the storeroom after Mrs. Olson's death and found the trunk broken open and the small box in which the papers were contained removed.

The basic question presented by these appeals is whether the evidence is sufficient to support the finding of the trial court that the writing executed and delivered by defendant's parents contained neither an agreement to adopt plaintiff nor that she would share equally with defendant in their property, and that defendant's parents did not agree to adopt plaintiff nor did they agree that she should share equally with defendant in their property.

■■ In Johnston v. Eriksson, 71 S. D. 268, 23 N. W.2d 799, we adhered to our former pronouncement that the burden of proof rests upon one seeking to share in the estate of another by virtue of such a contract, as is here alleged, to established the same by evidence so clear, cogent and convincing as to leave no reasonable doubt as to the agreement. And it is as thoroughly settled that it is the function of the trier of the facts to pass on the credibility of witnesses and where the credibility of witnesses entered into the findings, they will not be disturbed unless the evidence clearly preponderates against them. Houck v. Hult, 63 S. D. 290, 258 N. W. 142. Cf. Rhode v. Farup, 67 S. D. 437, 293 N. W. 632.

■ In presenting the evidence for review plaintiff does not question these principles. Emphasis is placed upon the fact that plaintiff and her stepmother, who saw the written agreements and testified to their terms, are not directly contradicted by any witness, and upon all of the many circumstances which corroborate their testimony; and it is asserted that the trial court was not warranted in disbelieving plaintiff and her stepmother, and that the clear weight of the evidence is against the court's findings.

A somewhat similar problem confronted the court in State v. Nieuwenhuis, 55 S. D. 636, 227 N. W. 84. The finding there challenged was that an allegedly lost will had

never been executed by the deceased. Two witnesses, who were not directly contradicted by any witness, described the making of the will, and told of its terms. The contention was that the court was bound to accept their testimony. This court determined that the evidence as a whole supplied the trier of the facts with a rational basis for disbelieving the testimony of the proponent's witnesses, and therefore it upheld the finding of the trial court.

This cause was tried upon the theory that the agreement to adopt plaintiff and that she should share equally with defendant in the property of his parents was contained in the above-described lost writing. We have not failed to appreciate the strength of the circumstantial evidence which corroborates plaintiff's testimony. We concede it to be doubtful whether this court would have been justified in disturbing a finding favorable to plaintiff's theory. However, the issue here is whether such a finding is impelled. We have concluded that the record offered the trier of the fact a rational basis for its disbelief of this vital testimony of plaintiff and her stepmother. We content ourselves with a brief indication of some of the circumstances which, in our opinion, establish that the trial court's disbelief was a rational and not an arbitrary disbelief.

The foremost of the circumstances is the cross-examination of plaintiff. Although plaintiff had testified that the writing contained the agreement to adopt her, and that she should share equally with defendant in the property of John and Olina Olson, when pressed on cross-examination she testified that she couldn't say whether it contained more than an agreement that she wouldn't become a public charge and that the Olsons would keep her and make a home for her until she was able to care for herself. Further, although according to plaintiff, the importance to her of this agreement had been pointed out by Mr. Olson before his death in 1929, and many times by Mrs. Olson, and Mrs. Olson had taken her to the storage room and showed her where it was kept the day before her death, and plaintiff, her sister and her sister's husband had gone to the storage room and found the trunk open and the agreement removed, plaintiff admits that she

came out of that storeroom into the immediate presence of the defendant and of the lady who had cared for the deceased and made no mention of the agreement nor of the fact that the trunk had been broken open and the small box of papers removed. Shortly thereafter the local banker, who was named as executor of Mrs. Olson's will, and the lawyer who drew that will, came to the home and in the presence of plaintiff and defendant, the lawyer said that plaintiff was to have the home and everything in it, and defendant was to have the farm, etc. Nevertheless, plaintiff made no mention of the agreement, nor of the startling discovery she had just made. She later attended hearings in county court and signed a receipt for property received under Mrs. Olson's will and there made no mention of the agreement nor of its loss. She claims to have told the executor about the agreement during the probate proceeding. The executor testified that as he remembered it, she claimed to be the adopted daughter of the Olsons. Further, although plaintiff testified that she learned about this agreement when she was about fourteen in the year 1915, she admits that she never mentioned the subject to defendant until in 1938 just prior to the commencement of this action; that she then wrote him a letter reading in substance: "I have found out about my adoption. What are you going to do about it?" Further, plaintiff's testimony indicates that defendant's parents were anxious that the agreement be safeguarded for her. Two copies of the agreement were in their possession. Plaintiff was a grown married woman when Mr. Olson talked about the agreement prior to his death and she was even more mature and more able to safeguard her interests when Mrs. Olson showed her the two copies of the agreement in the spring of 1934. Yet instead of delivering a copy of the agreement to plaintiff for safekeeping, both copies, according to plaintiff, were placed in a trunk in the storage room.

Further, there could be but one reason for Mrs. Olson's desire to safeguard the alleged agreement for plaintiff, viz., because she wanted plaintiff to have one-half of the Olson property in accordance with the terms of that agreement. At the very time when, according to plaintiff, Mrs. Olson was

evincing her solicitude for plaintiff, she had more than one-half of the Olson property in her name and could have conveyed that property to plaintiff. Instead of so doing she deeded only the Canton home to plaintiff, and executed a will in which she provided that plaintiff was to have the Canton home and its furnishings and that defendant was to have the rest and remainder of her property. Other witnesses testified to her repeated declarations that Dina was to have the home and everything in it and Henry was to have the farm. Further, plaintiff's brother Martin remained in Norway after plaintiff came to America. He later immigrated to Canton and became well acquainted with the Olsons. In fact it was Martin who Mr. Olson consulted when plaintiff wanted to get married. Martin testified he had never heard of a claim that Olsons were to adopt plaintiff until about the time of the commencement of this action. Further, it is undisputed that the original negotiations which resulted in plaintiff's coming to Olsons were carried on by her brother Christian. He not only testified against plaintiff but he produced a letter purporting to be from plaintiff's father to Mr. Olson, the translation of which reads: "Ransford, May 19, 1905. Dear Anton and Olive. Gunda will go to you and then Dina can go along. Mrs. Knutson will send Gunda ticket. I hear in your letter that you will be good to her and give her school and be good to her until she can take care of herself. I am alone now with my son. I am working in the timber now. * * * * Yes Anton you must greet Kristyan he is at your place and working I think. Yes you may write. Peter Kristyan, Ranford, Norway."

If we are right in concluding that these and other matters contained in the evidence furnished the trial court with reasonable grounds for disbelieving plaintiff and her stepmother's testimony with reference to the contents of the written agreement, and we think we are, then it follows that it cannot be said that the clear weight of the evidence is against the challenged finding of the court. Plaintiff's entire case falls with this vital testimony. We are of the opinion that the contention that the evidence is insufficient to support the above-described finding is untenable.

 The trial of this cause was opened in January 1941. Owing to continuances to allow plaintiff to procure testimony from Norway, and the difficulties in so doing because of the war, judgment was not finally entered for defendant until May 1943. Even then plaintiff had been unable to secure some of her depositions from Norway. At the outset of the trial, pursuant to notice to produce letters written by plaintiff's father, defendant produced the above-quoted letter. The testimony of plaintiff's brother Christian and that letter were introduced in January 1941. Thereafter plaintiff sought and introduced testimony for the purpose of showing the letter to be forged, and to impeach Christian. The motion for new trial included a showing of so-called newly discovered evidence tending to impeach Christian and the described letter. By the time the motion was heard in January 1946, plaintiff's depositions had arrived from Norway and pursuant to an agreement of counsel they were submitted to the trial court as a part of plaintiff's showing. One of these depositions was by the second wife of plaintiff's father. With a photostatic copy of the above-quoted letter before her, she testified that it was not in the handwriting of her late husband. She also testified that he signed his name as "Petter Christiansen." Two signatures which appear to us as "Petter Christians" were identified as authentic by plaintiff's stepmother and the other depositions. We note that plaintiff's stepmother spells her name "Kristiansen."

A motion for a new trial is addressed to the sound legal discretion of the trial court and our only function is to determine whether it has abused its discretion. Island v. Helmer, 63 S. D. 362, 258 N. W. 812. When such a motion is grounded upon newly discovered evidence, the ultimate question for the trial court is whether the described evidence would produce a different result upon a new trial. In the instant case the cause was tried to the court. The trial judge has examined plaintiff's showing and by its ruling it has indicated its opinion that the described showing would not change the result. Walker v. Sorenson, 64 S. D. 143, 265 N. W. 589. We can only interpret this ruling to mean that with the additional evidence described in plaintiff's af-

fidavits and in the described depositions in the record, the court would continue to disbelieve the testimony with reference to the contents of the lost agreement. For the reasons heretofore pointed out, we cannot say that the court would act unreasonably in so doing, and hence cannot say that its denial of a new trial constituted an abuse of discretion.

Other matters assigned have received careful consideration but in view of the foregoing are not deemed to merit discussion.

The judgment and order of the trial court are affirmed.

SICKEL, P.J., and ROBERTS, J., concur.

POLLEY and RUDOLPH, JJ., not sitting.