**Marcella M. STOLTZ, Plaintiff and Appellant,**

v.

**Russell STONECYPHER, Defendant and Appellee.**

**No. 14028.**

Supreme Court of South Dakota.

Argued May 25, 1983.

Decided July 20, 1983.

Curt Ireland, Rapid City, for plaintiff and appellant.

Edward C. Carpenter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendant and appellee.

FOSHEIM, Chief Justice.

This is a personal injury action arising out of an automobile accident in Rapid City. Plaintiff appeals from the order denying her motion for a new trial on the grounds the $10,000 verdict was inadequate. We affirm.

█ In determining whether the trial court abused its discretion in denying an application for a new trial, we view the evidence in the light most favorable to the verdict. *Hanisch v. Body,* 77 S.D. 265, 90 N.W.2d 924 (1958). The verdict, although in plaintiff's favor, was for less than she had claimed.

The accident occurred on the evening of October 20, 1981, at the controlled intersection of Omaha Street and 8th Street. Plaintiff described the weather as raining, mixed with snow. It was "very dark and glary." She was operating her windshield wipers while proceeding east on Omaha Street. Plaintiff entered the intersection on a green light and collided with defendant's vehicle. She did not see the defendant's car prior to the collision.

The Defendant was eighteen years old at the time of the accident. He and his younger sister were on their way home, proceeding west on Omaha street, when the accident occurred. Defendant testified he stopped behind a car at the intersection in the left hand turning lane. The car ahead waited for oncoming traffic to pass and then completed a left hand turn. Defendant thereupon pulled into the middle of the intersection, waited for an oncoming vehicle to pass, looked for traffic, and started his left turn on a yellow light. Some eastbound traffic had approached the intersection and stopped before the defendant commenced his turn. Defendant testified that, in turning, he first observed plaintiff's vehicle before it entered the intersection. It appeared to the defendant that plaintiff's vehicle was traveling at approximately 40 m.p.h. and could have been accelerating.

The impact occurred about halfway through the intersection in the right eastbound lane of Omaha Street which is a four lane highway.

Dr. Baries, the physician in charge of plaintiff's treatment at the hospital, noted that "aside from a fractured patella, I doubt if she has significant findings. She tends to be quite an anxious person." In the discharge summary the findings were of a fractured patella and abdominal wall contusions. Both Dr. Baries and Dr. Berkebile, the treating orthopedic surgeon, testified that during her hospitalization and follow up treatment Mrs. Stoltz made no complaints to them relating to neck or back injuries. In his initial physical examination Dr. Berkebile palpated the neck and back areas and obtained no subjective or objective evidence of any problem.

Plaintiff testified that she had numerous problems in addition to the nondisplaced fracture of the right patella and the abdominal soreness, all of which were experienced immediately after the accident and continued up to the time of trial. The problems included weakness in one arm and pain in her arms, left shoulder, kidney, hips, collarbone, neck and back. According to plaintiff, she failed to reveal these problems and symptoms to Drs. Baries and Berkebile since they did not specialize in treating such complaints. She also stated that she preferred to be treated by a chiropractor because orthopedic surgeons always want to operate.

Dr. Berkebile testified that plaintiff sustained a nondisplaced fracture of the right patella which has resulted in a 5% permanent-partial disability of the right lower extremity. He further testified that the chondromalacia he later diagnosed was not related to the accident in question. Dr. Baries testified that in his opinion plaintiff did not sustain a neck injury as a result of this accident. Dr. Schwietert testified, however, that plaintiff suffered a 40 to 50% permanent disability of the whole person as a result of the accident.

A new trial will not be granted because of inadequate damages merely because the court believes the verdict smaller than it should be. In tort actions involving personal injuries the amount of damages is peculiarly a question for the jury. *Hanisch, supra.* This court has said "the verdict of the jury will not be set aside except in extreme cases as where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law by which damages in the particular case were to be measured." *Simons v. Kidd,* 73 S.D. 306, 311, 42 N.W.2d 307, 309 (1950); *See also: Hanisch, supra; Tufty v. Sioux Transit Co.,* 70 S.D. 352, 17 N.W.2d 700 (1945).

An application for a new trial is addressed to the sound judicial discretion of the trial court and the only function of this court is to determine whether that discretion has been abused. *Thormahlen v. Foos,* 83 S.D. 558, 163 N.W.2d 350 (1968); *Johnson v. Olson,* 71 S.D. 486, 26 N.W.2d 132 (1947). This includes a verdict in a personal injury action for the amount of medical specials only, as such verdicts may be explainable and sustainable. *Gould v. Mans,* 82 S.D. 574, 152 N.W.2d 92 (1967). The verdict in this case approximated the special damages claimed.

It is the rule, however, that orders granting new trials stand on firmer ground than orders denying them as they are not conclusive or decisive of any rights or issues. *Jensen v. Miller,* 80 S.D. 384, 124 N.W.2d 394 (1963).

Viewing the evidence most favorable to the verdict, we cannot conclude as a matter of law that the plaintiff was not guilty of slight negligence in comparison with the negligence of the defendant.

SDCL 20–9–2.[1] The jury was instructed as to the standard of care required of drivers by SDCL 32–25–3[2] and could find that she was driving at a speed greater than was prudent considering visibility, weather conditions and surface of the highways. Questions relating to negligence and contributory negligence are questions of fact for determination by the jury in all except the rarest of instances. *Ricketts v. Tusa,* 87 S.D. 702, 214 N.W.2d 77 (1974); *Myers v. Quenzer,* 79 S.D. 248, 110 N.W.2d 840 (1961); and *Peterson v. Denevan,* 177 F.2d 411 (8th Cir.1949). Since the trial court did not err in submitting the issue of negligence to the jury, it was their province to reduce plaintiff's damages in proportion to her contributory negligence. We distinguish the facts in this case from those in *Gould, supra,* where the plaintiff was a passenger in a taxicab.

There is, however, an additional basis on which the jury could reduce the damages claimed by plaintiff. In *Gould,* 152 N.W.2d at 93, we stated:

> An adequate verdict cannot be guaranteed by the courts to every plaintiff who prevails in a personal injury action and we are not willing to adopt an inflexible rule which would in effect render every verdict approximating a plaintiff's medical expenses inadequate and invalid as a matter of law. Such verdicts have been sustained and explained by the courts on various grounds such as: ... there is evidence of a pre-existing injury[.]

Plaintiff admitted to an extensive history of complaints prior to the accident similar to those she attributed to the accident. The jury was instructed in effect that they could award plaintiff an amount

---

**1.** SDCL 20–9–2 reads: "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence."

**2.** SDCL 32–25–3 reads: "It shall be unlawful for any person to drive a motor vehicle on a highway located in this state at a speed greater than is reasonable and prudent under the conditions then existing or at speeds in excess of those fixed by this Chapter or provided by the State Highway Commission."

which will reasonably compensate her for all damages she suffered as a result of this injury, and the aggravation of any pre-existing condition. This instruction was consistent with our decision in *Pollman v. Ahrens,* 88 S.D. 249, 218 N.W.2d 475 (1974); *See also,* 30.03 of the Pattern Jury Instructions. It is implicit from the instructions that no damages can be awarded for any previous or subsequent ailments or injuries unrelated to the accident. 22 Am.Jur.2d Damages § 115. *See also Bertness v. Hanson,* 292 N.W.2d 316 (S.D.1980); *Kowing v. Williams,* 75 S.D. 454, 67 N.W.2d 780 (1954). Plaintiff's damage claims rest on the assumption that they resulted entirely from the accident. The evidence warranted a jury finding that some of plaintiff's claimed injuries, ailments and loss of earnings were not the result of this accident.

Plaintiff testified that she sought no professional help for her neck, back and other problems until she went to a chiropractor, Dr. Davis Schwietert, about six months after the accident. Dr. Schwietert's records disclosed, however, that when plaintiff first visited his clinic she complained only of low back pain, which she attributed to lifting a basket of wet clothing. She did not reveal other symptoms, or the car accident.

In one instance, plaintiff testified that she had never ridden further than 130 miles in a car at one time subsequent to the accident and that the farthest she had driven was to downtown Rapid City from her home in Black Hawk. Dr. Schwietert's records, however, disclosed that she had told him that she drove 700 miles in one twelve-hour period. In another instance, plaintiff denied she had fallen down a flight of stairs since the accident. Again, Dr. Schwietert's records contradicted her testimony, as she had told him that since the accident, she had fallen down nine stairs, landing on concrete.

The jury was given the standard instruction that if they believed any witness knowingly testified falsely concerning any material matter, they could then reject all the testimony of that witness. The plaintiff was quite thoroughly impeached. The ad-

versary process operated to put her credibility into question. This may have caused the jury to disbelieve and thus reject some or all of her claims, particularly her subjective testimony concerning pain and suffering. It also became questionable whether plaintiff's claimed loss of earnings were supported by her actual earnings history.

 We cannot conclude as appellant urges that the inadequate verdict was the obvious result of passion or prejudice or that the jury has palpably mistaken the rules of law by which damages must be measured. Accordingly, the order denying a new trial was not an abuse of discretion.

Affirmed.

All the Justices concur.