Albert L. FREEMAN and Marcia
Freeman, Plaintiffs and
Appellants,

v.

Martin A. BERG,

and

Jay Cripps and the City of Rapid City,
South Dakota, jointly and severally,
Defendants and Appellees.

Nos. 17521, 17533 and 17541.

Supreme Court of South Dakota.

Considered on Briefs Dec. 2, 1991.

Decided Feb. 26, 1992.

Rehearing Denied March 26, 1992.

J.M. Grossenburg of Day and Grossenburg, Winner, for plaintiffs and appellants.

James S. Nelson of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for appellee City of Rapid City.

Edward C. Carpenter of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellee Jay Cripps.

MILLER, Chief Justice.

This is an appeal in an action wherein the jury awarded Albert Freeman (Freeman) $100,000 damages for injuries he received as a result of a car accident in Rapid City, South Dakota. His wife, Marcia Freeman (Marcia) received a zero verdict for her loss of consortium claim. This appeal is from the trial court's denial of a motion for new trial, grounded principally on inadequate damages, and also on its instruction to the jury on the issue of contributory negligence. We affirm.

### FACTS

On December 19, 1988, at approximately 5:30 p.m., James Mattson (Mattson) was attempting to enter the Interstate 90 access road from Omaha Street when he was rear-ended by Freeman. It was a minor accident; the only damage was to Mattson's taillight. Mattson and Freeman

moved the vehicles to the side of the road to allow traffic to pass.

Shortly thereafter, Officer Jay Cripps arrived at the accident scene. He parked his car directly ahead of the Mattson vehicle on the access road and walked back to talk to Mattson and Freeman. At one point, all three men were standing between Mattson's car and Freeman's pickup. Officer Cripps and Mattson walked away moments before a car driven by Martin Berg rear-ended Freeman's pickup. At that time, Freeman was still standing between the vehicles.

The impact from Berg's vehicle pushed Freeman's pickup forward, pinning one of Freeman's legs between the front of the pickup and the rear of the Mattson vehicle. As a result, Freeman's leg was severely injured to the extent that it was suggested that he consider amputation. Freeman underwent several operations in order to save his leg.

Freemans commenced this action against Berg, Officer Cripps and City, jointly and severally. They alleged Officer Cripps was negligent in failing to protect the scene of the first accident. They assert that Cripps should have parked his vehicle behind Freeman's to alert on-coming traffic of the danger. Officer Cripps and City cross-claimed against Berg, seeking an apportionment of fault among the defendants. Subsequently, Freemans settled their claim against Berg for $100,000; however, Berg remained a named defendant at trial for purposes of apportionment of fault.

Prior to trial, Freemans voluntarily dismissed Officer Cripps from the lawsuit *with prejudice*, leaving City as the only defendant to be present at trial. City moved for a dismissal of the complaint, alleging that dismissal of the claims with prejudice against Officer Cripps, who was an employee of City, should result in dismissal of the claims against City, since all of Freemans' allegations against City were based entirely on the doctrine of responde-at superior. This motion was denied.

The jury rendered a verdict in favor of Freeman in the amount of $100,000. On the verdict form, the jury found City and Berg to be each fifty percent at fault. However, as a result of the credit for the $100,000 settlement paid by Berg to Freeman, City was assessed only costs. Freemans later filed a motion for new trial, alleging that there were insufficient damages. That motion was denied.

## DECISION

I. Whether the trial court erred in instructing the jury on the issue of contributory negligence.

■ Freeman contends that the jury should not have been permitted to determine the degree of any negligence on his part. He claims there was inadequate evidence on the issue, and that his alleged negligence was not any legal cause of his injuries.

The first accident occurred at approximately 5:30 p.m. when it was just getting dark. It was rush hour, traffic was heavy, and Freeman's headlights were off. Officer Cripps arrived a few minutes later and pulled in front of the two vehicles. Within minutes, the second accident occurred. Berg, whose deposition was read at trial, testified that a street light was out, it was dark, and he did not see Freeman's parked vehicle.

During the trial, there was extensive testimony concerning the illumination of Freeman's vehicle. Officer Cripps testified that he thought he saw lights illuminated on the rear of Freeman's pickup when he approached the accident scene. Officer Brown, an accident reconstructionist, testified that in his opinion Freeman's lights were not on at the time of impact. Berg stated the lights were not on when he ran into Freeman. Freeman's expert testified that he was unable to determine whether the lights were on or off at the time of the accident.

The jury was instructed that it must reduce Freeman's damages if Freeman was himself contributorily negligent in a degree less than slight compared to that of City.[1]

1. The dissent claims "there can be no assess-    ment of a degree of fault on the part of Free-

'Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.'

*Gerlach v. Ethan Coop Lumber*, 478 N.W.2d 828 (S.D.1991) (quoting *Starnes v. Stofferahn*, 83 S.D. 424, 432, 160 N.W.2d 421, 425 (1968)). Certainly, the jury could have found that Freeman was negligent if it believed his lights were not on. This is particularly true considering it was dark and traffic was heavy. Under these circumstances, we believe there was sufficient evidence to support the instruction on contributory negligence. *Schelske v. South Dakota Poultry Co-op*, 465 N.W.2d 187 (S.D.1991); *Ballard v. Happy Jack's Supper Club*, 425 N.W.2d 385 (S.D.1988); *Stenholtz v. Modica*, 264 N.W.2d 514 (S.D. 1978).

II.   Whether the trial court abused its discretion in denying Freeman's motion for a new trial.

Freeman argues that the trial court should have granted his motion for a new trial because the jury awarded inadequate damages under the influence of passion or prejudice. Alternatively, Freeman asserts the evidence was insufficient to sustain the verdict. SDCL 15–6–59(a)(5) and (6) provide:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

.       .       .       .       .

man because no party to this litigation ever made a written or oral request to include Freeman as a "negligent contributor." We do not know what Justice Henderson's definition of a "negligent contributor" includes. Certainly he does not suggest that Freeman was a joint tortfeasor." *See* SDCL 15–8–11.

Under South Dakota law, the jury is instructed to reduce the plaintiff's damages proportionately if it finds plaintiff was contributorily negligent in an amount not more than

(5) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law[.]

As noted earlier, the jury returned a verdict in favor of Freeman in the amount of $100,000. Marcia received nothing on her loss of consortium claim.[2] The jury found Berg and City to each be fifty percent at fault. Freeman settled with Berg prior to trial for $100,000, and the jury was advised of this settlement; however, the jury did not know the amount of the settlement.

Under SDCL 15–8–17, a release by the injured person of one joint tort-feasor (Berg) reduces the claim against the other tort-feasor (City) in the amount of the consideration paid for the release ($100,000). Accordingly, City was assessed only costs.

"Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this court will not disturb the trial court's decision absent a clear showing of abuse of discretion." *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D.1990); *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983); *Thormahlen v. Foos*, 83 S.D. 558, 564, 163 N.W.2d 350, 353 (1968); *Johnson v. Olson*, 71 S.D. 486, 493, 26 N.W.2d 132, 136 (1947).

A.   *Inadequate Damages*

Ordinarily, we leave the question of whether damages awarded by the jury were the result of passion or prejudice to the trial court. *Id.; Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D. 1985). In addition, a trial court may not grant a new trial merely because it believes

slight. This reduction is performed prior to apportioning fault among the joint tortfeasors. In this case, the jury had only two joint tortfeasors to divide between; hence, a total of 100 percent apportionment. Pursuant to SDCL 15–8–12, fault is apportioned between the *joint tortfeasors* because they are subject to a right of contribution.

2.   We have considered Marcia's appeal on her loss of consortium claim and find it to be without merit.

the verdict is smaller than it should be. *Kusser, supra; Itzen v. Wilsey*, 440 N.W.2d 312 (S.D.1989). "In tort actions involving personal injuries the amount of damages is peculiarly a question for the jury." *Stoltz*, 336 N.W.2d at 657; *Kusser, supra.*

■ Freeman contends that since the amount of medical bills ($129,771.03) was stipulated to, that Freeman is entitled to *at least* that amount. However, the jury was properly instructed to "fix the amount of money which will *reasonably* and *fairly* compensate [Freeman] for any of the following elements of loss or harm suffered[.]" City never stipulated that the medical bills incurred by Freeman were reasonable. City stipulated that the amount of the medical bills was "reasonable and necessary *for the treatment rendered.*" This saved Freeman from having to prove each and every bill. It did not eliminate the need to prove that the treatment was in fact necessary. In fact, there was testimony that the efforts to save Freeman's leg were the result of his personal choice and were perhaps not the most reasonable or practical choice.

On the final day of trial, one of the jurors left a note on the court reporter's table which stated: "Are we allowed to know the amount of the settlement to Freeman from the accident that has already been settled? If not, are we allowed to know if it was enough to take care of Freeman's past and future medical bills?" The trial court advised counsel of the existence of the note; however, apparently with the consent of counsel, the jury was never told the amount of the settlement.

During deliberations, the jury sent out a note stating: "If the city was 50% at fault, would it be 50% of the dollar amount listed for settlement?" In response to this note, the trial court instructed the jury that it must rely upon the instructions as given.

Freeman argues that the jury disregarded the instructions and did not find the *total* damages suffered by Freeman. However, when reviewing the trial court's decision to deny a motion for a new trial, we review the evidence in the light most favorable to the verdict. *Kusser, supra.* In this case, the jury was also properly instructed that it could reduce Freeman's award of damages if Freeman was himself contributorily negligent.

From reviewing the verdict form, there is no way for this court to know how the jury arrived at the $100,000 figure. "Mere assertions of what the jury may have concluded are insufficient" to show prejudice. *Duncan v. Pennington County H.A.*, 283 N.W.2d 546, 553 (S.D.1979); *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958). "Under such circumstances we have indicated that if a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied." *Bankwest, Inc. v. Valentine*, 451 N.W.2d 732, 736 (S.D.1990); *Fjerstad v. Sioux Valley Hospital*, 291 N.W.2d 786, 788 (S.D.1980); *Baker v. Jewell*, 77 S.D. 573, 580, 96 N.W.2d 299, 304 (1959).

Because the jury may have reduced the damages to account for contributory negligence by Freeman, or may have concluded that the stipulated medical bills were not reasonable, we must affirm the trial court's decision to deny a new trial based upon inadequate damages.

B. *Insufficient Evidence*

"A new trial should not be granted on the basis of insufficient evidence unless the finding of the jury on a question of fact is 'unreasonable, arbitrary, and unsupported by the evidence.'" *Kusser, supra* (quoting *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D. 1980)).

We reiterate, there was evidence of contributory negligence. If the jury chose to accept this evidence, then the jury was within its province in reducing Freeman's damages in proportion to his contributory negligence. *See Kusser, supra; Stoltz, supra.* Additionally, there was evidence that the medical bills were not reasonably incurred. Based on the evidence presented at trial, we cannot conclude that the jury's findings were so unreasonable, arbitrary, and unsupported by the evidence that the

trial court clearly abused it discretion in failing to award a new trial.[3] *Id.*

Freeman's counsel has not argued that the jury was improperly instructed on this issue. However, we believe an instruction similar to the one in *Degen v. Bayman* would have been helpful to the jury:

If you find for the Plaintiffs and against the Defendant, you must award to each of the Plaintiffs the total amount of damages which they sustained by reason of the accident. You may not make any deduction whatsoever therefrom by reason of the settlement as you have not been instructed concerning what amount was paid by [settling party] to the Plaintiffs in connection therewith.

90 S.D. 400, 404, 241 N.W.2d 703, 705 (1976). Freeman did not propose or request this instruction and, as a result, there is no question concerning the instruction on appeal. *Carlson v. First Nat. Bank,* 429 N.W.2d 463, 465 (S.D.1988); *State v. White Mountain,* 332 N.W.2d 726 (S.D.1983); *State v. Halverson,* 87 S.D. 110, 203 N.W.2d 421 (1973). We encourage trial courts and counsel to consider such an instruction in the future when presented with the situation where one joint-tort-feasor settles prior to trial.

Affirmed.

SABERS and AMUNDSON, JJ., concur.

WUEST and HENDERSON, JJ., dissent.

HENDERSON, Justice (dissenting).

A miscarriage of justice here attends. I must therefore dissent.

### I.

Under *Lewis v. Storms,* 290 N.W.2d 494 (S.D.1980), Albert Freeman has established that the jury verdict of $100,000 is "unreasonable, arbitrary, and unsupported by the evidence."

Freeman's Exhibit # 1 (attached hereto) reflects an itemization of medical expense totalling $129,771.03. Notwithstanding the majority opinion's statement to the contrary, said Exhibit # 1, appended hereto and by reference made a part hereof, is captioned a STIPULATION (between Freeman and City). It reads:

IT IS HEREBY STIPULATED as follows: That the Plaintiff, Albert L. Freeman, incurred the following medical bills in the total amount of $129,771.03 for the treatment of injuries received on December 19, 1988. *Said amount is reasonable and necessary for the treatment rendered.*

It is obvious that the verdict was for less than the stipulated damages. Notwithstanding the Chief Justice's footnote attempting to traduce this writing, the stipulation reflects that the amount of $129,771.03 was "necessary for the treatment rendered." Necessary means necessary and the city should not be able to wiggle out of it.

### II.

Additionally, majority opinion incorrectly discourses and decides this appeal, inter alia, on contributory negligence of Albert Freeman. Note the attached VERDICT of the jury reflecting 50% "Degree of Fault" on the part of the City of Rapid City and "50% Degree of Fault" on the part of Berg. Jurors then collectively depict the "TOTAL" "Degree of Fault" as *100%* upon City of Rapid City and Berg. Perforce, jurors assigned no percent of fault on Freeman, whatever reasoning, contrary thereto, this Court now chooses to employ. Pray tell, how can Freeman be negligent in any percent when the 100% negligence has been entirely pro-rated (used up!)? Furthermore, there can be no assessment of a degree of fault on the part of Freeman because no party to this litigation ever made a written or oral request to include Freeman as a negligent contributor. City is too late now; it is trying to sneak in the

---

**3.** Appellees raise two questions by notice of review: (1) whether the trial court erred in denying City's motion to dismiss, and (2) whether the trial court erred when it allowed Freeman to vacate its dismissal with prejudice. Because we hold that the trial court did not abuse its discretion in denying Freeman's motion for a new trial, we do not need to reach the questions raised by the notice of review.

back door. We should set aside this verdict as to the damages but not as to the liability. Liability has been decided: The verdict expresses that "We, the jury, duly empaneled in the above entitled action and sworn to try the issues therein, *find for the Plaintiffs below* ..." There is no liability left to be tried. Only damages must be tried. Mr. Chief Justice's footnote on the assessment of a degree of fault fails to appreciate the legal point of the dissent. The idea of the majority opinion, as you thread through the opinion, is that Freeman was negligent, inter alia, if it [the jury] believed his lights were not on. Furthermore, the winning appellee argues that Freeman was contributorily negligent by standing between the two vehicles. This argument cannot be advanced *now* because it was not advanced during the jury trial. *Weaver v. Boortz*, 301 N.W.2d 673 (S.D. 1981). By the terminology "negligent contributor," which apparently has drawn attention of the Chief Justice, it was my intent to establish that Freeman could not be guilty of contributory negligence because the jury found that the city was 50% at fault and Berg was 50% at fault.

We now tell South Dakota's Trial Bench: Next time, instruct on *Degen*. It is, obviously, too late, under that theory, to help this poor fellow. This jury was sincerely troubled on the damage issue; it wanted legal advice from the trial judge.* Two separate notes were sent out by the jury. Trial judge responded by having this typed on a handwritten note: "You must rely upon the instructions as given. S/Merton

* *See,* notes of jury, consisting of two pages attached hereto, sent to the trial judge, filed in

B. Tice, Jr., Circuit Court Judge." Instructions of Law are to be given in accordance with the issues presented. Had an admonition or instruction been given, as suggested by the majority opinion, under *Degen*, this inadequate award of damages would not have developed. Under SDCL 15-6-59(a), (5) and (6), it follows that the Motion for New Trial should have been granted. Yes, the jury was advised that Berg had settled with Freeman, but they were not advised that the settlement was for $100,000, Berg's policy limits. The jury was trying to arrive at a good and just verdict but valuable information was withheld from them. Where an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. *Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D. 1985). A new trial should be restricted to damages. Statutory authority for this latter sentence may be found at SDCL 15-6-59(a): "A new trial may be granted on all *or part of the issues* for any of the following causes: (6) Insufficiency of the evidence to justify the verdict or ... that it is against law." (Emphasis added mine). The jury was forced to *speculate* on the amount of the Berg settlement. On Instruction No. 32, the jury was instructed that it *must* fix the amount necessary to *reasonably* and *fairly compensate* for the elements of loss. This instruction concluded by stating that the verdict must not be on *speculation* or conjecture. But that is exactly what the jury had to do.

I am hereby authorized to state that Justice WUEST joins this dissent.

Circuit Court, Pennington County, South Dakota, on February 11, 1991.